IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA          )
                                  )
        v.                        )          1:09CR129-1
                                  )
TIMOTHY NORMAN SUTPHIN            )


**ORDER**

Presently before this court are Motions to Reduce Sentence
re Compassionate Release, (Docs. 126, 133), filed by Defendant
Timothy Norman Sutphin. For the reasons stated herein, the court
finds that both motions should be denied.

I.    **FACTUAL BACKGROUND**

Defendant was indicted in three counts of a six-count
indictment and charged in Count One with conspiracy to
distribute large quantities of methamphetamine, and in Counts
Two and Three with distribution of methamphetamine. (Doc. 1.)
Defendant entered into a plea agreement by which he agreed to
plead guilty to Count One of the indictment, a violation of 21
U.S.C. § 846 and § 841(b)(1)(A) for conspiracy to distribute 500
grams or more of a mixture and substance containing a detectable
amount of methamphetamine. (Doc. 32 at 1.) Based on his
statements to law enforcement, Defendant was found to be
accountable for 23.587 kilograms of methamphetamine. (Doc. 80-1

¶ 16.) Defendant was originally sentenced to a term of imprisonment of 235 months. (Doc. 50 at 2.) Defendant appealed his conviction, but the conviction was affirmed. (Doc. 61.) Defendant's sentence was later reduced, pursuant to 18 U.S.C. § 3582(c)(2), to 188 months. (Doc. 87.) Defendant's current estimated release date is February 9, 2022.[1]

A. **Defendant's First Motion**

Defendant filed his first Motion to Reduce Sentence re Compassionate Release on April 13, 2020. (Doc. 126.)[2] Defendant asked this court to order him to home confinement. (Id. at 4, 12.)[3] Defendant argued that he has a heart condition and has been taking medications for that condition for five years. (Id. at 4.) Defendant also claimed he has an autoimmune disorder but did not specify a particular condition. (Id.) Defendant also argued that his offense was nonviolent, and that his pattern score supported the conclusion that he was not a risk to the community. (Id. at 7.) Defendant also pointed out that his

---

[1] Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jul. 22, 2020).

[2] Although the motion was filed on a form used for filing a habeas petition, 28 U.S.C. § 2255, the court construed Defendant's motion as a motion for compassionate relief.

[3] All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

facility, FCI Danbury, was specifically mentioned in Attorney General Barr's order directing increased home confinement. (Id. at 8.)

The government responded to Defendant's first motion and noted that Defendant was not eligible for home confinement due to his history of violence and having received an infraction in November 2019. (Doc. 131 at 8.) The government also noted that Defendant's reduction in sentence ("RIS") request was not sent to the Danbury warden until May 11, 2020. (Id. n.1; Doc. 131-1 at 2.) This meant Defendant had not exhausted his administrative remedies prior to filing his first motion. Finally, the government pointed out that Defendant submitted no medical records to substantiate his claims about his health, and that the records requested by the government only indicated that Defendant suffered from hypertension and gastroesophageal reflux disease ("GERD"). (Doc. 131 at 12.) Defendant did not reply to the government's response. Defendant's first motion is ripe for ruling.

### B.    **Defendant's Second Motion**

Defendant did, however, file a second Motion to Reduce Sentence re Compassionate Release on June 1, 2020. (Doc. 133.) Defendant argues that he has exhausted his administrative remedies. In support of that conclusion, Defendant quotes from a

- 3 -

District of Connecticut opinion in a class action filed on behalf of inmates at FCI Danbury. (Id. at 2.)[4] Defendant provides more medical details about his hypertension, GERD, and now alleges he has a history of bronchitis. (Id. at 3.) Defendant does not provide any medical records. Defendant notes that he is housed in an open-living space where he cannot socially distance. (Id. at 2.)

The government responded to Defendant's second motion. (Doc. 136.) First, the government points out that Defendant submitted his RIS on May 8 or 11,[5] and it was denied on May 13, 2020; Defendant did not wait thirty days or exhaust his administrative appeals. (Id. at 4; Docs. 136-1, 136-2, 136-3.) This means, the government argues, that the court is barred from acting on Defendant's motion. (Id. at 11.) The government also points out, again, that Defendant is ineligible for home release since he is a "medium" recidivism risk according to the BOP. (Id. at 8.) The government also contends that Defendant's medical conditions are well controlled and that none of them place him at high-risk, according to current CDC guidance. (Id.

---

[4] The case is Martinez-Brooks v. Easter, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *18 (D. Conn. May 12, 2020).

[5] Defendant filled out the RIS form on May 8, but his email submitting the form is dated May 11. (Doc. 136-1.)

- 4 -

at 16-17.) The government attached some of Defendant's medical records to its response. (Doc. 136-4.)

In his Reply, Defendant points out that FCI Danbury has only one positive COVID case but claims that is due to a lack of testing. (Doc. 137 at 1.) Defendant against cites to Martinez v. Easter to support his assertion that his administrative remedies have been exhausted. (Id. at 2.)

Defendant's second motion is now ripe for ruling. For the reasons stated herein, the court finds both motions should be denied.

## II. **ANALYSIS**

### A. **Request for Home Confinement**

Defendant, in his first motion, repeatedly asks this court to order him to home confinement. Though the court will construe both of Defendant's motions broadly to also include requests for a reduction in sentence, to the extent that Defendant asks this court to (1) review BOP's decision to deny Defendant's request for home confinement and/or (2) order home confinement, those requests will be denied.

"The BOP has exclusive authority to determine defendant's place of imprisonment, including home confinement, and the BOP's placement decisions are not reviewable by any court." United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3

- 5 -

(E.D.N.C. Apr. 22, 2020); see also 18 U.S.C. §§ 3621(b),
3624(c)(4) (providing the BOP with discretionary authority to
place certain prisoners in home confinement but noting "nothing
in [§ 3624(c)] shall be construed to limit or restrict the
authority of the [BOP] Director under section 3621"). As a
result, the court is without jurisdiction to order the BOP to
place Defendant on home confinement. See United States v.
Caudle, 740 F. App'x 364, 365 (4th Cir. 2018). Further, the
CARES Act does not provide this court with authority to order
home confinement.

> [T]he CARES Act provides that "if the Attorney General
> finds that emergency conditions will materially affect
> the functioning of the [BOP], the Director of the
> [BOP] may lengthen the maximum amount of time for
> which the Director is authorized to place a prisoner
> in home confinement under the first sentence of [18
> U.S.C. § 3624(c)] as the Director determines
> appropriate." CARES Act of 2020, Pub. L. No. 116-136,
> § 12003(b)(2), 134 Stat. 281, 516. This provision does
> not authorize the court to order defendant's placement
> in home confinement. Accordingly, defendant must
> seek home confinement through the BOP's administrative
> system.

Gray, 2020 WL 1943476, at *3; see also United States v. Grady,
Criminal Case No. 1:18-cr-00113-MR-WCM, 2020 WL 2569994, at *1
(W.D.N.C. May 21, 2020) (citing and quoting CARES Act, Pub. L.
No. 116-136, 134 Stat 281, 516 (2020)) ("During the covered
emergency period, if the Attorney General finds that emergency
conditions will materially affect the functioning of the Bureau

- 6 -

[of Prisons], the <u>Director of the Bureau</u> may lengthen the maximum amount of time for which <u>the Director</u> is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, <u>as the Director determines appropriate</u>." (emphasis added)); <u>United States v. Howard</u>, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 n.2 (E.D.N.C. May 6, 2020) (noting that the CARES ACT authorizes the BOP, not courts, to expand the use of home confinement); <u>United States v. Lowe</u>, No. 1:15CR11-1, 2019 WL 3858603, at *2 (M.D.N.C. Aug. 16, 2019) (noting that, under the First Step Act, an offender "does not have a <u>right</u> to be placed on home confinement or in a residential re-entry center; instead, the BOP has the discretion to determine if those options are appropriate"). Therefore, Defendant's request for home confinement will be denied.

### B. <u>Administrative Exhaustion</u>

The court finds that Defendant has failed to comply with 18 U.S.C. § 3582(c)(1)(A) in filing both of his motions.

"Federal law has long authorized courts to reduce sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, district courts could grant such reductions only upon a motion by the Director of Bureau of Prisons under 18 U.S.C. § 3582(c)(1).

- 7 -

United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended § 3582(c)(1) when it passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. Pertinent here, the First Step Act added a provision to § 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Both of Defendant's motions are untimely since Defendant neither exhausted his administrative appeals, (Doc. 136-3), nor did he wait thirty days from the time he submitted his RIS to the warden at FCI Danbury, (Doc. 136-1). As to Defendant's first motion, it was submitted on April 13, 2020, several weeks before Defendant submitted his RIS on May 11, 2020. (Compare Doc. 126, with Doc. 136-1.) As to Defendant's second motion, it was submitted on June 1, 2020. (Doc. 133.) At that point, Defendant had not exhausted his administrative appeals, because he had not

- 8 -

taken any administrative appeal. (Doc. 136-3.) Defendant was also within thirty days of his May 11 submission.[6] (Doc. 136-1).

Defendant almost acknowledges that he has not complied with 18 U.S.C. § 3582(c)(1)(A), arguing instead that the District of Connecticut has ruled that all inmates at Danbury have, as a matter of law, exhausted their administrative remedies. However, that district court opinion, an opinion issuing a temporary restraining order ("TRO"),[7] stated that only members in the "medically vulnerable" subclass have exhausted their administrative remedies as they pertain to requests for home confinement under 28 U.S.C. § 2241. Martinez-Brooks, 2020 WL 2405350, at *18. As discussed infra, Sections II.C and II.D, Defendant has not come forward with any evidence or allegations that he suffers from a condition that places him at high risk for COVID-19. Also, Defendant is moving under 18 U.S.C. § 3582, not for habeas relief under 28 U.S.C. § 2241. The Martinez-

---

[6] Even if the court assumed that the warden at FCI Danbury actually received the RIS on May 8, 2020, the date on the hand-filled form, Defendant still filed his second motion within 30 days.

[7] TROs expire after 14 days, "unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record." Fed. R. Civ. P. 65(b)(2). The court is not aware of any injunction in that action, nor has Plaintiff provided it.

- 9 -

Brooks court did not waive administrative exhaustion under § 3582, but instead required "the Warden to process Section 3582 requests more promptly and requires her to explain why, apparently, no consideration is being given in this process to the serious risk of illness or death posed to the medically vulnerable subclass." Id. at *26. For both of these reasons, the court finds that the TRO issued by the Martinez-Brooks court does not relieve Defendant of the requirements in 18 U.S.C. § 3582.

### C. Consideration of Policy in U.S.S.G. § 1B1.13

Further, the court finds that, even if Defendant had exhausted his administrative remedies or waited the requisite period of time, his motion should be denied in light of the policy statements in U.S.S.G. § 1B1.13.

If exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release, or (2) be at least 70 years old, have served 30 years in prison, and have the Director of Bureau of Prisons determine that the defendant is not a danger to the public. U.S.S.G. § 1B1.13(1)(A) and (B). Additionally, a court, in considering a reduction in sentence pursuant to § 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if

- 10 -

it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). This includes United States Sentencing Guideline § 1B1.13. Section 1B1.13 essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); see also Beck, 425 F. Supp. 3d at 578. The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release, including when an inmate is suffering from a debilitating medical condition that has "substantially diminishe[d] the ability of the [inmate] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 application note 1(A)(ii).

For over a year, the Sentencing Commission has lacked a quorum and thus has not updated its policy statements on compassionate release since the First Step Act was signed into law in December 2018. Beck, 425 F. Supp. 3d at 579 n.7. Thus, the current phrasing of § 1B1.13 addresses scenarios in which the BOP Director files a motion for compassionate release, but not situations in which an inmate files a similar motion under § 3582. As such, § 1B1.13 provides helpful guidance when

- 11 -

considering a motion filed by an inmate, but "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." Beck, 425 F. Supp. 3d at 579. Therefore, when considering the merits of an inmate's § 3582(c)(1)(A) motion for compassionate release, the court must consider the § 3553(a) factors but is not limited by the policy statements outlined in § 1B1.13,[8] but those factors and policy statements must be considered in light of current circumstances, including the First Step Act and the new compassionate release procedure under 18 U.S.C. § 3582(c)(1)(A)(i). See id.

Even if Defendant had exhausted his administrative remedies, giving this court jurisdiction to consider his motions, the policy statements in U.S.S.G. § 1B1.13 do not support granting either motion. Though Defendant has some medical conditions, they do not rise to a level where they "substantially diminish[] the ability of the [inmate] to provide

---

[8] In Stinson v. United States, the Court held that the commentary is the equivalent of legislative rules and therefore must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." 508 U.S. 36, 45 (1993) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)); see also United States v. Allen, 909 F.3d 671, 674 (4th Cir. 2018). Here, however, the commentary relates to a statute, 18 U.S.C. § 3582, and the commentary has not been addressed since the statute was amended. To some extent, therefore, neither the commentary nor the Guidelines are consistent with the statute.

self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 application note 1(A)(ii). Defendant's medical records contain no indication that Defendant's conditions are not in control, nor, as the government points out, are GERD or standalone hypertension COVID risk factors according to the latest CDC guidance.[9] Further, Defendant is 41 years old, an age that puts him at lower risk as well.[10]

Finally, the government alleges that the BOP has classified Defendant as a "medium" recidivism risk, (Doc. 136 at 8); in his first motion, Defendant claimed his pattern score is a "minimum level," (Doc. 126 at 7). Defendant did not refute government's contention in his reply supporting his second motion. (See Doc. 137.) Defendant also never refuted the government's assertion

---

[9] People with Certain Medical Conditions: Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Jul. 22, 2020). "Based on what we know at this time, people with the following conditions might be at an increased risk for severe illness from COVID-19: . . . Hypertension or high blood pressure." Id. The only type of hypertension listed in that section, however, is "Pulmonary hypertension." Defendant does not claim to have pulmonary hypertension, nor do his medical records indicate that he does.

[10] Older Adults: Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Jul. 22, 2020).

- 13 -

that he received a prison infraction in November of 2019. (Doc. 131 at 8.) Though Defendant's crime for which he is currently incarcerated was not a violent offense, it was an offense involving widescale distribution of a dangerous controlled substance, and Defendant had a history of at least one other methamphetamine offense prior to his federal guilty plea. (Doc. 80-1 ¶ 31.) In light of the unrefuted assertions in the government's responses, as well as Defendant's own criminal history, this court concludes that defendant is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); see also Beck, 425 F. Supp. 3d at 578.

The policy considerations in U.S.S.G. § 1B1.13 do not support granting Defendant's motions, because he is a risk to the community, and his medical issues do not rise to the level of extraordinary and compelling reasons.

### C.   Section 3553(a) Factors

Regardless of whether Defendant had exhausted his administrative remedies, the factors enumerated in 18 U.S.C. § 3553(a) also do not support granting his motions.

Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). The court must consider —

- 14 -

(1) the nature and circumstances of the offense and
the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to
    promote respect for the law, and to provide just
    punishment for the offense;

    (B) to afford adequate deterrence to criminal
    conduct;

    (C) to protect the public from further crimes of
    the defendant; and

    (D) to provide the defendant with needed
    educational or vocational training, medical care,
    or other correctional treatment in the most
    effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range
established for [the applicable offense category as
set forth in the guidelines] –

    . . . .

(5) any pertinent policy statement . . . by the
Sentencing Commission . . . ;

    . . . .

(6) the need to avoid unwarranted sentence disparities
among defendants with similar records who have been
found guilty of similar conduct; and

(7) the need to provide restitution to any victims of
the offense.

Id. As detailed below, the factors relevant to Defendant's case

weigh against Defendant's release.

The first factor, "the nature and circumstances of the offense and the history and characteristics of the defendant," does not support granting Defendant's motions. Defendant pleaded guilty to a serious drug offense, a conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. (Doc. 80-1 ¶ 2.) Based on his own statements to law enforcement, Defendant was held accountable for 23.587 kilograms of methamphetamine during the conspiracy. (Id. ¶ 16.) The factual basis upon which his guilty plea was based stated that Defendant repeatedly sold significant quantities of methamphetamine. (Id. ¶¶ 6-15.) Though Defendant did not use any violence, threat of violence, or firearm during the commission of his offense, he did engage in a pattern of repeated criminal behavior involving a dangerous controlled substance. As for Defendant's characteristics, Defendant was a Criminal History Category IV when he was sentenced, (id. at 21), and, as discussed above, has been classified as a "medium" recidivism risk by BOP. Though Defendant has completed a large amount of programming while incarcerated, he does not dispute that he received an infraction within the past year. Because of the nature of the crime and Defendant's characteristics, his motions should be denied.

- 16 -

The factors listed in § 3553(a)(2) also do not support granting Defendant's motion. The need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," cautions against granting Defendant's motions. Defendant was originally sentenced to 235 months imprisonment, but later had that sentence reduced to 188 months. Twice Defendant received a sentence at the bottom of his Guideline range. As a part of Defendant's original plea deal, the government agreed not to file an information of prior conviction that would have resulted in a 20-year mandatory minimum. (Doc. 57 at 5.) Though the court is not suggesting that Defendant should not receive the benefit of his bargain, neither is it willing to alter Defendant's sentence to what amounts to a downward variance when Defendant was responsible for more than 20 kilograms of methamphetamine and committed at least one other methamphetamine crime prior to his instant offense.

Defendant's repeated conduct involving methamphetamine is why the need for the sentence "to afford adequate deterrence to criminal conduct" also does not support granting Defendant's motions. The court does not believe that Defendant's continued incarceration will, at this point in Defendant's sentence, provide an appreciable level of general deterrence; however, the

- 17 -

level of specific deterrence is appreciable. Though Defendant has served the vast majority of his term of incarceration, Defendant's past conduct suggests he stands a significant chance of becoming involved in methamphetamine crimes again. BOP's classification of Defendant as a "medium" recidivism risk supports that conclusion. By declining to adjust Defendant's sentence below the bottom of his reduced Guidelines range of 188 months, the court can ensure the public will not be exposed to Defendant's involvement in the large-scale sale of dangerous substances until at least February 2022. It is for that reason that the factors in § 3553(a)(2)(B) and (C) do not support granting Defendant's motions.

Defendant has done a commendable job of programming while incarcerated, so the need to provide additional vocational training supports granting Defendant's motions, but it is the only factor that does.

"[T]he kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines]" do not support granting Defendant's motions. As noted above, twice Defendant was sentenced at the bottom of his Guidelines range. To grant Defendant's motions would be to grant him a downward variance of 18 months, a variance Defendant's offense conduct and previous criminal conduct do not support.

- 18 -

As discussed above, the policy statements in U.S.S.G. § 1B1.13 do not support granting Defendant's motions, meaning § 3553(a)(5) also does not support granting Defendant's motions. The final § 3553(a) factors are not relevant to Defendant's case.

For the reasons stated herein, the court finds that regardless of Defendant's exhaustion of his administrative remedies, the relevant factors in 18 U.S.C. § 3553(a) do not support granting either of Defendant's motions.

### D. COVID-19

Defendant argues that the ongoing COVID-19 pandemic supports his compassionate release, since his hypertension, GERD, and history of bronchitis makes him particularly vulnerable to the virus. The court disagrees.

Indeed, "the COVID-19 outbreak is unprecedented and poses a heightened risk to those in this nation's prisons and jails." United States v. Carver, No. 4:19-cr-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020). With that risk in mind, "the Attorney General has directed the Bureau of Prisons, when assessing compassionate release applications, to prioritize the transfer of incarcerated inmates to home confinement 'where appropriate' to decrease the risks to their health." United States v. Resnick, No. 14 CR 810 (CM), 2020 WL 1651508, at *5

- 19 -

(S.D.N.Y. Apr. 2, 2020) (quoting Memorandum for Director of
Bureau [of] Prisons from the Attorney General, Prioritization of
Home Confinement As Appropriate in Response to COVID-19 Pandemic
(March 26, 2020), accessed at https://www.justice.gov/file/
1262731/download). Although "it is prudent to consider the
factors that the Attorney General finds to be important," the
memo "has no binding force on the Judiciary." Id. Many of the
factors identified by the Attorney General are similar to the
factors in 18 U.S.C. § 3553(a) and U.S.S.G. § 1B1.13 that the
court has already considered here.

   Although the Attorney General has encouraged the BOP to
move vulnerable inmates to home confinement, those facts do not
persuade the court that his motions should be granted at this
time. Defendant overlooks that the Attorney General has
emphasized that, when the BOP considers moving an inmate to home
confinement, the inmate's crime of conviction should be taken
into consideration. Memorandum for Director of Bureau [of]
Prisons from the Attorney General, Prioritization of Home
Confinement As Appropriate in Response to COVID-19 Pandemic
(March 26, 2020), accessed at https://www.justice.gov/file/
1262731/download. As fully discussed above, Defendant's offense,
though not violent, involved the repeated sale of
methamphetamine and involvement in a conspiracy to distribute

more than 20 kilograms of the same. Widespread, repeated distribution of such a dangerous controlled substance is a threat to the community.

Furthermore, Defendant's conditions do not clearly place him at an increased risk due to COVID-19. See supra, Section II.B.

Finally, though FCI Danbury was one of the first facilities cited by the Attorney General as heavily impacted by COVID-19, currently there is only one confirmed case in a staff member and none in the inmate population.[11] In his Reply, which was filed on July 13, 2020, Defendant alleges there was only one inmate with COVID-19. (Doc. 137 at 1.) If that is true, then FCI Danbury is reducing the number of cases, as there are now no inmates with COVID-19. Defendant claims that the low numbers are due to a lack of testing and claims the last test given was on May 27, 2020. (Id.) If that were true, it is not clear how it could also be true that Defendant was aware of a COVID-19 positive inmate on July 13, a month-and-a-half later.

Defendant's living conditions at Danbury do not sound compatible with social distancing, but the best information before this court is that Danbury currently has no COVID-19

---

[11] COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jul. 22, 2020).

cases in its inmate population. Even if it did, Defendant is a 41-year-old with no health conditions that the CDC's current guidelines classify as high risk. For those reasons, the presence of COVID-19 in the BOP system is not enough to justify the relief Defendant requests in his motions.

## III. <u>CONCLUSION</u>

For the reasons stated herein,

**IT IS THEREFORE ORDERED** that Defendant's first Motion to Reduce Sentence re Compassionate Release, (Doc. 126), is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's second Motion to Reduce Sentence re Compassionate Release, (Doc. 133), is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's request to proceed <u>in forma pauperis</u>, (Doc. 127), filed simultaneously with his first motion for compassionate release is **DENIED AS MOOT.**

This the 28th day of July, 2020.

William L. Osteen, Jr.
_____
United States District Judge